**FILED** PK

JUL 03 2018

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES OF AMERICA
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DISTRICT

JASON A. CRAWFORD )
      *Plaintiff,* )
)
)
)
v. )
)
)
)
MCC Chicago, )
A.M. Owens (Warden) )
et al., )
      *Defendants.* )
_____ )

Affidavit in support
of Class Action
Suit being brought

1:18-cv-04637
Judge: John J. Tharp, Jr.
Magistrate Judge: Jeffrey T. Gilbert
PC3

NOW COMES, Plaintiff, Jason A. Crawford, in support of the Class Complaint; a resident of Kenosha County, Wisconsin, currently incarcerated at the Metropoloitan Correction Center of Chicago (MCC Chicago), located at 71 West Van Buren Street, Chicago, Illinois 60605, being duly sworn, hereby depose and state the following:

This is a detailed record I am providing to this Honorable court pertaining to the corrupt, unjust and harassing way the staff at MCC Chicago treat all "Pre-Trial" detainees who are supposed to be safeguarded under The Constitution. The Federal Due Process Clause states that Pre-Trial detainees are only supposed to be held for "Pre-Trial" purposes, and are not to be punished at all, however that is the opposite of what actually occurs behind the walls of MCC Chicago. My family has already brought mant of these issues to the attention of Senator Richard Durbin's office.

The Constitutionally-based saying, "Innocent until proven guilty" in no way, shape or form applies in a facility such as MCC Chicago. Every day, PreTrial detainees are treated like we have been found guilty beyond reasonable doubt, and as if we are already convicted criminals. We, (PreTrial detainees, humans first) are harassed, belittled, punished and talked to in very demeaning ways on a daily basis. *Actually sentenced* FBOP prisoners who are already at thier respective prisons are not treated in such a manner in which MCC Chicago pretrial detainees/cadre

inmates are.

I have been a Pretrial detainee at MCC Chicago since Monday,
August 07, 2017. The following transpires on a daily basis at MCC
Chicago.

1. MEDICAL CARE: Sub-standard medical care is provided to pre-
trial detainees and FBOP cadre inmates here at MCC Chicago. Even a
simple request made directly to any nurse presenting a
condition/symptom which should be able to be

easily addressed, such as a burning rash, or ear ache will go unaddressed and untreated even after the nurse has physically seen the condition. Other more serious conditions or presenting symptoms such as a swollen face, trouble breathing, black bowel movements (indicative of blood present in the stool), or chest pain etc. will a majority of the time when physically presented to the unit officer go unaddressed. The unit officer will respond with, "if it is not life threatening, then I don't need to call medical".

I have Chrohn's Disease, and have since my incarceration on Sunday, February 12, 2017 been cut off of all Crohn's medication. During that time, I have undergone four hospitalizations while in county/state custody. One of those hospitalizations resulted in major surgery. Two additional hospitalizations have taken place while at MCC Chicago. Before my last hospitalization while at MCC Chicago, it took MCC Chicago staff over four hours to get me to the emergency room after my symptoms were made known to the unit officer Officer Sarabia, medical staff, and Lieutenant (Lt.) C. Williams (female). My presenting symptoms were as follows: Throwing up stomach bile, throwing up blood, black stools, extreme belly pain, belly distention, and very elevated blood pressure. This type of medical treatment is beyond sub-standard and *dangerous*. I was diagnosed as having a bleeding ulcer, which could have potentially became fatal. Officer Martin, who was watching me on the medical floor before I was approved to go to the hospital, stated "security always comes first before the health of an inmate even if the inmate is experiencing a serious or life threatening

condition. Security comes first over inmate life."

First of all, that is *completely* unacceptable when it comes to any person's life. MCC Chicago staff is delegated with the care of its inmates, especially pre-trial detainees who technically have not been found guilty of any crime yet, and who are still technically afforded all of the same rights as those of un-incarcerated citizens.

On Thursday, March 15, 2018, I was placed in the Special Housing Unit (SHU) at approximately 9:15 p.m. I was told by Lt. J. Buckle it was for an outside medical appointment I had scheduled for the following day. Lt. J. Buckle, the officer who brought me to the SHU, refused to tell me what the appointment was for. Officers McCormick and Canada who were working the SHU on Thursday, March 15, 2018 at 9:15 p.m. also refused to tell me what the medical appointment scheduled for the next day was for. I assumed that the appointment was for a second colonoscopy. The first colonoscopy I had done, was unable to be completed by the GI Specialist Albisu MD, Jose at Thorek Memorial Hospitol, located at 850 W. Irving Park Road, Chicago, IL 60613 because I was not prepped correctly for the procedure due to MCC Chicago staff error and negligence. MCC Chicago staff physician Dr. Nowakowski said she was going to re-schedule me for a second colonoscopy. I assumed that this appointment was for another colonoscopy that I refused to have done on the following date of Saturday, February 17, 2018 to Dr. Nowakowski and the American Health Service Administration (AHSA) office via cop-out for the following reasons. (I) The GI Specialist Albisu MD, Jose of Thorek Memorial Hospitol

stated there is no piont in performing any let alone a second colonoscopy because my Chrohn's Disease only affects my small-bowel. (II) Because the first time MCC Chicago staff prepped me for the colonoscopy they did not provide me the proper amount of thime needed to propery prep for such a procedure, as well as forcing me to try and prep under conditions that were beyond disgusting, un-sanitary, harsh and extremely stressful. I was placed into an un-cleaned and un-sanitized SHU cell that had human feces under the bunk-bed/rack that I was forced to clean up as well as a urine-splattered covered toilet and sink as well as human hair all over every flat surface of the cell other than the walls. I was refused cleaning supplies. I was also while in the SHU both times for "medical reasons" not provided basic hygiene supplies, i.e., hand towel, body towel, toothbrush, toothpaste and soap. Conditions such as these are horrendous, unnecessary, extremely stressfull, a *huge* health risk and torturous.

For disclosure purposes, I will not state the Pre-Trial detainee's name. A Pre-Trial detainee on my unit (Unit 13C) presented to MCC Chicago medical staff symptoms related to a previous head injury he was still dealing with. MCC Chicago medical staff took x-rays, saw the seriousness of his condition and stated the seriousness of his current injuries; yet the MCC Chicago medical staff refused to get him immediatly to the hospital for further emergent care of what could be a potentially very serious if not life threatening

condition. This gentleman's condition has been deteriorating
rapidly. Loss of cognitive skills, very short term memory loss and
balance issues. Nothing has been done for this Pre-Trial detainee.
I am at personal imminant risk of the same negligence and
diliberate indifference again, commonly displayed to others.

I still have not been placed back on the biologic medication I
was taking prior to my incarceration for the treatment of my severe
Crohn's disease. I have not been placed on *any* medication for the
treatment of my Crohn's disease for the entire duration of my
incarceration. On a daily basis, I suffer the symptoms associated
with the non-treatment of my condition, and will continue to suffer
while in custody. I have also and am still experiencing extreme
weight loss. In addition, I have experienced hair loss on my legs,
as well as severe rashes and constant burning and itching of my
skin. I have presented all of these symptoms via cop-out to the
medical staff, specifically Dr. Nowakowski. Dr. Nowakowski has
failed to adress *any* of these current ongoing symptoms. These
symptoms are a sign of malnutrition due to my not being able to eat
properly due to my Crohn's disease, and because my body can't
absorb the nutrients of any food I do consume due to my not being
on the biologics needed to manage and treat my Crohn's disease
which I have

been cut off from for the duration of my incarceration.


2.  DENTAL CARE:  Basic dental care is not provided here at
MCC Chicago to pre-trial detainees other than an initial
consultation and tooth extractions.  Pre-trial detainees are
not allowed to have tooth cleanings performed regularly
because they are no yet actual FBOP inmates/prisoners.  This
is *absolutely* not right.  Any outside dentist and I am
assuming even the dentist at this institution (MCC Chicago),
would recommend regular professional cleanings to be performed
at least every six months (twice a year).  I know for a fact
that my outside dentist recommended to me to receive at least
two cleanings a year, if not four times a year for
preventative care.  However, once you become a pre-trial
detainee, you now lose that ability to acquire this type of
"important" preventable care/treatment of your teeth.  I have
not been afforded one professional tooth cleaning over the
duration of my incarceration, resulting in three of my teeth
having to be extracted and one tooth falling out on its own.
This could have been prevented had I been provided with proper
dental care.  Some pre-trial detainees are incarcerated for
many years before they either beat their case at trial and are
released, or are finally able to plead out, get sentenced and
become an FBOP prisoner.  No pre-trial detainee should have to
wait that long to be able to acquire basic but *important* pre
ventative oral hygiene maintenance/care for their teeth.  This
is another prime example of how the U.S. Government treats
*humans* after they are incarcerated yet not been found guilty
of any crime; expose them to horrible, stressful conditions,

and then won't even provide basic, "quality" care to them.

3.   BLACK MOLD: Black mold is growing in certain areas of MCC chicago; Including cell 1314 on unit 13C, which has black mold growing on the ceiling from a water leak caused by the shower stall located on the other side of the cell. There is also black mold growing below the sink on the floor from yet another leak in the same cell, cell 1314 in Unit 13C.

These are very *serious* health risk issues which were presented to, as well as shown to, the following staff in October of 2017, and absolutely nothing has been done to

correct/fix this issue: the Associate Warden, Mr. Hewitt
(Executive Assistant to the Warden), Officer Robinson (Unit
Counselor), Mrs. Martinez (Unit Case Manager), Ms. Shoulders
(Unit Manager), MCC Chicago Maintenance Supervisor, MCC
Chicago Facility Plumber Officer Lucas, Officer Cwetna,
Officer Schwolow, Office Howell, Officer Cockrell, Officer
Sarabia, Officer Rodriguez, Officer Poe, Lt. J. Buckle, Lt. C.
Williams (female), Lt. C. Williams (male), Lt. Vaughn Lt.
Jones and Dr. Nowakowski as well as the resident forensic
psychology department and psychologist intern Miss Vigil, were
made aware of this *serious* health risk. My ex-elderly cell-
mate and I were subjected to that cell for three months. My
ex cell-mate has since then been diagnosed with lung
issues/spots on his lymph nodes, possible cancer, he is
scheduled for a biopsy. I was still housed in that cell for
an additional month and a half after my elderly cell mate
moved to another cell. We were subjected to the very
*dangerous* conditions of cell 1314 for far too long. They
are still housing other pre-trial detainees in cell 1314 of
unit 13C, who have also complained of breathing issues.
Officer Robinson and Officer Sarabia were the *only* staff
members out of all of the staff members who were made aware of
this *serious* issue that actually submitted work orders.
However, nothing was done to fix this issue even after the
work orders were submitted.

        The smell of mold in cell 1314 of unit 13C is strong.
This is another example of MCC Chicago staff's blatant
disregard for the safety and health conditions of pre-trial
detainees. Black mold is a very serious issue. The Health

Department would never allow a business to have black mold present and let the business continue to run. Why is it okay for a facility operated by the Federal Government housing *human beings* to get away with not addressing such conditions as this, which are very serious? This once again is an example of how this facility disregards pre-trial detainees' civil and constitutional rights. We (pre-trial detainees') are not looked at by this facility and or government as humans who still have rights. We are not seen by this facility and/or government as *humans* who still have rights. Based on the treatment we receive by MCC Chicago staff, it feels as if we are looked upon as a dispensable commodity, number and paycheck/job security; this is blatantly wrong and disgusting. How can someone who is delegated with the creation and passing of this great nation's laws allow a government-run facility, which should be held to the highest standards of upholding the laws of this great nation, get away with issues such as these?

We are sometimes treated no better than animals, in that neither they nor we are provided napkins at mealtimes.


4. CONDITIONS OF SHU: On Thursday, January 18, 2018, right before evening lock-down which takes place at 3:45 p.m., Officer Cockrell called my name and told me I was going to R&D which is located on the fifth floor, to get my property returned to me from my previous hospitalization. Staff packs your property out when you are sent to the hospital for emergency reasons. Once I was on the elevator, the guard running the elevator stopped the elevator on floor 11, then

told me I was going to be spending the night in the SHU due to an outside medical appointment for a colonoscopy I was having performed the next day, Friday, January 19,2018.  While still on the elevator the guard asked me to turn around.  I complied, and the guard then proceeded to handcuff me.  Once I was handcuffed, I was then escorted off of the elevator and onto the SHU.  I was then placed into a holding cage where I was strip searched, placed in different institution clothing then hand-cuffed and escorted to the cell I was going to be occupying for the night.  Once I was locked into the cell, I noticed immediately how deplorable the conditions of the cell were, and the strong smell of feces.  The sink/toilet combo was covered in urine splatters, the floor around the edge of the toilet was covered with urine.  The bunk-bed/rack that was affixed to the wall was covered in dirt, debris and human hair.  The mattress provided to me was covered in dirt/grime and only contained half of it's padding.  The strong smell of feces was finally discovered after I proceeded to look under the bunk-bed/rack.I discovered under the bunk-bed/rack human feces. After I made this unbelievable, grotesque and *extremly* unsanitary discovery I immediately proceeded to bang on the cell door so as to gain the attention of the unit officer.  When the unit officer finally approached the cell, I made him aware of this unacceptable and deplorable issue and asked him to remove me from the cell and to have the cell cleaned.  The unit officer refused, so I asked him to provide me gloves, sanitizer and paper towels.  The unit officer provided me only with toilet paper.  I was forced to clean up the feces and the rest of the cell with only toilet paper.

Conditions such as these are deplorable, abusive, malicious and a form of torture. No Health Inspector would *ever* accept conditions such as these. The unit officers are supposed to make sure that every cell is cleaned and sanitized prior to putting a new detainee in it. This experience was an absolute nightmare and *major* health hazard. The conditions of that SHU cell is another example of the *extremly* poor and unchecked management of MCC Chicago staff by MCC Chicago warden, Warden A.M. Owens. This type of treatment of pre-trial detainees is absolutely unbecoming, incorrigible, abusive and should *absolutly* be investigated and corrected.

On the night of Thursday, March 15, 2018 at approximately 9:10 p.m. I was called to the guard station of my unit Unit 13C by Lt. J. Buckle. Lt. J. Buckle informed me that I had to go with him. I asked Lt. J. Buckle what for. He did not reply until I was in the sally port and the internal/movement officer arrived by way of elevator; that's when Lt. J. Buckle told me I was spending the night in the SHU for an outside medical appointment I was having the following day. I then proceeded to tell Lt. J. Buckle that I had refused (reference section 1. MEDICAL CARE: of this correspondence, paragraph 5 as to why I refused a medical appointment) by way of cop-out for my second colonoscopy weeks prior to that evening, the evening of Thursday, March 15, 2018 with AHSA and Dr. Nowakowski. I even told Lt. J. Buckle that I had the printed copies of the cop-outs I sent to the medical staff refusing the second colonoscopy. Lt. J. Buckle proceeded to tell me that that did not matter, I am going to be spending the night in the SHU and will have to refuse the

appointment in the morning. Once on the elevator, I was hand-cuffed
and taken to the eleventh floor were the SHU is located. Once on
the unit, I was placed inside a holding cage, strip searched
(completely naked), and given SHU approved clothing. I was then re-
hand-cuffed and taken to the cell I was going to be occupying for
the night. Once in the cell, I for a second time immediatly noticed
how unbelievably disgusting the conditions of the cell were. Urine
all over the seats, sides, and back splash of the toilet/sink
combo; urine around the bottom of the toilet on the floor; the sink
was absolutly filthy; the bunk-bed/rack was covered in dirt, debris
and human hair; the floor was  covered in debris, human hair and
brown-stained, used toilet paper. The mattress was covered in
dirt/filth. The guards did not have anyone clean/sanitize that cell
after the last occupants were removed. This extreme negligence, and
deliberate indifference to my health and safety are unacceptable. I
was supposed to be in a medical holding cell, for the limited
purpose of my medical needs; yet I am being punished in a non-
medical cell, causing unnecessary stress shortly before surgery.

5.   DISCIPLINE: Pre-Trial detainees (including myself) are
continually being written-up and sanctioned for reasons that are
absolutely absurd, and non-violent or endangering in any way. Good-
time will be taken, loss of commissary, phone, email and even

visits.  The average time of loss is 30 days.  They will place
you in the SHU as well.

        Federal Due Process Clauses pertaining to pre-trial
detainees state that pre-trial detainees are not supposed to
be punished at all.  They are only to be held for pre-trial
purposes.  Pre-trial detainees are being written-up and
sanctioned for things such as:  a towel hanging up the wrong
way, more than two books on the top of your locker, if your
bed isn't made perfectly, if you disagree with an officer's
actions, if you miss a medical, educational, recreational or
any other type of appointment, if you bring your plastic bowl
onto the main floor during meal time, or if you get into an
argument with another pre-trial detainee, which is bound to
happen eventually when you house 88 men in one tightly
configured cell block/housing unit.

6.  ABUSE OF LOCK-DOWNS:  MCC Chicago staff constantly abuse
their right to use lock-down procedures which are to be used
for emergency purposes.  However, staff will lock-down pre-
trial detainees sometimes 3-4 times a day for no apparent
reason.  This is on top of the scheduled lock-down times for
stand-up counts they perform.  Staff will lock-down the entire
facility for five minute intervals which makes no sense.  No
true emergency can be resolved in five minutes.  Staff will
also lock-down the facility for hour or longer intervals for
issues that have not taken place on multiple floors.  No two
units/floors at MCC Chicago are connected.  During a facility
lock-down, the unit officer is always present on the unit.  He
or she is not allowed to leave the unit.  So the argument is

such that there is zero need for them to lock-down the whole facility even during an emergency, because no two floors are connected in any way, and the unit officer is always present. Therefore they should only lock down the unit where the emergency/incident is taking place and occurred.

Federal Due Process Clauses pertaining to "pre-trial" detainees states that pre-trial detainees cannot be punished.

Officer Howell who works the first shift on Mondays on unit 13C abuses her powers by locking down pre-trial detainees before serving lunch, yet no mid-day count is ever performed during the week, i.e.; M-F. No other officer since I have been at MCC Chicago does this. Officer Howell does this to exert her authority over pre-trial detainees. It's retaliatory conduct and harassing. Officer Howell's conduct needs to be addressed.

Officer Washington on Monday, February 12, 2018 at approximately 7:30 a.m. on unit 13C of MCC Chicago responded to a small altercation on section 4 of unit 13C between two pre-trial detainees. Officer Washington then proceeded to hit her emergency button calling for back-up. Officer Washington then ordered all pre-trial detainees back to their cells for a lock-down. After back-up arrived and the pre-trial detainees involved in the incident were removed from the unit. Officer Washington proceeded to keep us on lock-down. Instead of allowing the entire unit to come off of lock-down, Officer Washington let only the pre-trial detainee workers out, as well as those pre-trial detainees who were scheduled for educational classes. All other Unit 13C pre-trial detainees were forced to stay on lock-down until after 10 a.m. when

Officer Washington finally decided to start letting the other
pre-trial detainees out of their cells. However, Officer
Washington only allowed the rest of the pre-trial detainees
off of the lock-down after she viewed the condition of the
pre-trial detainees cell through the cell door window. If
Officer Washington did not approve of the condition of the
pre-trial detainees, cell, Officer Washington kept those pre-
trial detainees on lock-down until she did.

This is a direct example of the kind of abuse pre-
trial detainees undergo, and the abuse of power by MCC Chicago
staff/officers. Officer Washington's actions were unjust,
harassing and retaliatory in nature. Officer Washington's
conduct needs to be addressed.

On March 5, 2018 at approximately 1:45p.m., first
shift Rookie Officer C. Bouffard proceeded to lock-down the
entire Unit 13C because she failed to place inmates who where
coming back from the SHU into their properly assigned cells.
Then when 2nd shift Officer Sarabia arrived on Unit 13C at
2p.m. Officer Sarabia stated that the reason for the lock-down
was due to the first shift officer placing people into the
wrong housing assignments. Officer Sarabia told us he would
take us off lock-down in fifteen minutes after he was done
filling out his paperwork. Fifteen minutes turned into 45
minutes. Officer Sarabia could have completed his paperwork
after he took us off of the unnecessary lock-down but refused
to do so. This is another example of how MCC Chicago likes to
abuse their authority and exert their malicious punishments
upon pre-trial detainees.

There are several other reasons for lock-downs being

initiated, however, I am reluctant to go into any details regarding those issues due to very real concern for my physical safety.

7. LOCK-DOWN COUNTS: MCC Chicago staff perform "stand-up" "lock-down" counts M-F from 3:45 - 4:15 p.m. and between 10:15 - 11 p.m. Once the afternoon count has been completed, the unit officer will leave the pre-trial detainees locked down for an additional 45-60 minutes, even after the count has been cleared. All unit officers do this after every required stand-up lock-down count. Another issue is that on weekdays there is *never* a noon lock-down stand-up count performed. However, on the weekends when pre-trial detainees never have any scheduled appointments or classes to go to, and are allowed to be in casual dress, are required to go through a noon day stand-up lock-down count. Why is this? Additionally, some MCC Chicago staff, while performing the institution unit stand-up lock-down two man counts, will do so in a manner that is not consistent with other officers performing the unit stand-up lock-down counts. Example: the afternoon stand-up lock-down count will be performed by two officers who will walk back-to-back while performing the unit stand-up lock-down count. However, during the evening stand-up lock-down count one officer will go through and count two sections of the unit while the other officer stands on the unit's main floor until the first officer has completed his or her count of the first two unit sections. Once the first officer has completed his or her count of the first two unit sections the officer that was waiting/standing on the unit

main floor will then and only then proceed to count the two
unit sections the first officer finished counting. They will
then flip-flop count patterns for the last two unit sections.
Why is this? Why would certain sets of officers perform their
stand-up lock-down counts in tandem, but then others do it in
such a way that causes pre-trial detainees to have to stand
longer for no reason whatsoever? This is looked upon by most
pre-trial detainees as another way that the MCC Chicago staff
uses their authority to make pre-trial detainees' time at MCC
Chicago more stressful. No *consistency* whatsoever in the
routine of officers here at MCC Chicago.

8. SAFETY ISSUES: Pre-trial detainees' as well as cadre
inmates' bunk-beds/racks are hazardous to the pre-trial
detainees/cadres inmates who occupy the top bunk/rack space of
the bunk-bed/rack. Reason being; the absence of a safety
ladder which should be affixed to the bunk-bed/rack so
detainees and cadre inmates may safely climb up and down.

        Pre-trial detainees/cadre inmates who are assigned to
a top bunk/rack space must place one foot on the edge of their
metal locker which is, (I) approximately 3 feet away from the
bunk-bed/rack and, (II) very slippery due to the high gloss
paint finish on the surface of the locker. This causes a
hazard for the pre-trial detainee/cadre inmate due to having
to place one foot on the edge of the locker and balance
himself before having to place his other foot on his chair.
If a chair isn't present, then the pre-trial detainee/cadre
inmate must use the edge of the bottom bunk/rack, which is
very tricky and dangerous. This should not be the way pre-

trial detainees/cadre inmates are required to get down from a top bunk/rack assignment. I myself have fallen off of the top rack of a bunk-bed/rack twice since my incarceration at MCC Chicago. Both times I scraped my legs, bruised my knees and hurt my wrists. I was lucky those were the extent of my injuries, as they could have been a lot worse (if not fatal) had I fallen differently.

Issues such as this have been brought to the attention of MCC Chicago unit officers and administrative staff. However, nothing has been done by MCC Chicago staff to correct this safety issue, nor was I seen by medical staff. MCC Chicago's priority is the cost they would incur if they were to affix safety ladders onto every single bunk-bed throughout the facility, rather than the safety issue. Elderly people are being forced many times to have to be assigned to top bunk spots. That is not right. No one should be housed on a top bunk without the presence of a safety ladder.

9. MAINTENANCE ISSUES: When a pre-trial detainee presents and shows the unit officer a problem pertaining to a maintenance issue in their cell, such as a leaking sink or toilet, they often will not address the issue, or they will address it by moving both pre-trial detainees occupying that cell to a completely new unit where they must then acclimate to their new unit/surroundings. The unit officer will then lock the cell with the maintenance issue so as to allow maintenance to come whenever they feel like it to fix it.

10. TOBACCO USE BY STAFF: FBOP policy *does not* permit

*any* staff to have tobacco products on thier person at any time while on duty, or on correctional facility property. Why are MCC Chicago staff/correctional officers allowed to bring tobacco products on/into the facility? I have personally seen the following officers partake in the use of chewing tobacco: Officer McCormick, while working first shift, Tuesdays on Unit 13C. His usage can be seen through video surveillance. Officer Sheehan, who works in the basement in the laundry and commissary department, partakes in the use of chewing tobacco. I witnessed oficers smoking inside the parking garage when Pre-Trial detainees are taken to court and off-site medical appointments. When I was transported to Thorek Memorial Hospital for a medical emergency on January 14, 2018, Officers Martin and Greer both proceeded to smoke cigarettes for the entire drive to the hospital, causing my to cough, and threatening the integrity of any operations, and thus, my health above and beyond the incarenogenic compounds released into the air.

11. NON-CORRECTIONAL STAFF WORKING PRE-TRIAL DETAINEE UNITS:
I have witnessed non-correctional staff work/double as a unit officer on Unit 13C, i.e., the AHSA/United States Public Health Services Administration (USPHSA) staff member C. LaFleur, MCC Chicago, head psychologist Dr. Dana and one of the administration department staff members whose name I cannot provide due to her not having worn any type of name-plate. However, I would be able to physically recognize her. Educational Director Mr. Adams. I have also seen Chaplain M. Leshon work the visiting room where attorney visits are

conducted, as well as strip searches are performed. He would be required to perform strip searches if working that unit. Should a chaplain be conducting strip searches? This is a liability if these staff members are not actual trained FBOP correctional officers, meaning that they weren't just shown how to use handcuffs and pepper spray, but actually trained at an FBOP academy/training facility and were sworn in as FBOP correctional officers. *Huge* liability is held in allowing non-correctional staff to work on a pre-trial detainee or cadre inmate unit, not just for the pre-trial detainees/cadre inmates, but for staff as well. This needs to be addressed.

12. PHONE/MP3 CHARGING STATION ISSUES: The Trulincs officer Officer Ray was informed in November along with Mr. Armstrong (Facility Foreman) and Mr. Hewitt (Executive Assistant to the Warden) about the issues with two of Unit 13C's detainee unit phones. Unit 13C Section 2's phone has not worked at all since November of 2017. Unit 13C Section 4's phone half the time doesn't work due to the #4,5,6,7,8,9 and 0 keys sticking, as well as the phone at times will simply not work. MCC Chicago staff told about this issue have done nothing to resolve/fix this issue. 88 inmates between three phones, one of which only works half the time. Not only are these phones pre-trial detainees' sole means to communicate with family/loved ones, but for those pre-trial detainees who retain private counsel, their way to communicate with their attorneys.

Pre-trial detainees/cadre inmates have to purchase MP3 players at an exorbitant cost of $88.40 in order to be able to

watch TV. However, all four Unit 13C MP3 charging stations do not work properly, i.e.; ports with wrong size nipples installed or correct ports with correct sized nipples that do not work. This issue has been addressed to staff many times over, yet once again nothing has been done to correct the issue. It's okay for us to spend money on MP3 players, but then not be provided the proper resources to utilize our MP3 purchases. This needs to be addressed.

13. PHONE MINUTES : Pre-trial detainees are only allotted 300 call minutes per month to utilize. This is a problem and another example of the FBOP/MCC Chicago placing harsh restrictions on pre-trial detainees. 300 call minutes is nowhere near a sufficient amount of minutes for a pre-trial detainee to have. Pre-trial detainees who retain private counsel have no choice but to use their phone minutes to call and communicate with their attorneys; they cannot utilize the *free* public defender phone. This causes the pre-trial detainee to now have to choose whether to use his minutes for attorney calls or family/loved ones calls i.e.; mother, father, wife, child/children, grandparents, brother, sister, etc. If it's a choice between talking to and hearing the voices of your loved ones or to an attorney, which do you think a pre-trial detainee/human being is going to choose when their *freedom* has been stripped away from them? County jails and state prisons do not place this kind of harsh restriction on call minutes on pre-trial detainees and prison inmates; why does the FBOP/Federal Government? This is just another way to exert harsh punishment and control over *human*

lives.

14. STAFF UNIFORMS: MCC Chicago Correctional Staff *do not*
at all times wear policy-required uniforms. Examples:
Captain Macdonald, from what I have witnessed, never wears a
correctional uniform distinguishing captain bars. From what I
have witnessed, he only wears street clothes with a black vest
with FBOP patch and name tag displayed. No distinguishable
rank is visible to allow pre-trial detainees to be able to
tell that he is the actual facility captain. Many lieutenants
will not wear their actual correctional uniforms either and
will wear street cloths with FBOP issued black vests over
their street clothes which only displays their name. Warden
Owens does not wear a name plate displaying her name and
title. Most regular correctional staff do wear proper
uniforms, however, they also wear FBOP issued pull-over type
jackets that do not display their names. Some officers don't
wear any correctional uniform at all, making discernment of
their authority and position by pre-trial detainees
impossible. The Unit Counselors, Unit Case Managers and Unit
Managers do not wear name plates distinguishing their assigned
positions, either.

        This practice by MCC Chicago staff should not be
allowed. This allows correctional staff the ability to not
have their position and rank known to pre-trial
detainees/cadre inmates. As a result, pre-trial
detainees/cadre inmates do not have the ability to address the
proper facility staff pertaining to any and all concerns the
pre-trial detainee might have.

15. LEGAL MAIL: Legal mail/correspondence coming directly from *any* courthouse will be opened in the mail room instead of in front of the pre-trial detainee as should be. This poses *serious* privacy issues pertaining to legal information and correspondence, which under law is a protected right to remain private, afforded to pre-trial detainees. All legal mail/correspondence I have received from the courts to date has been opened in the mail room and not in front of me.

Legal correspondence from an attorney many times even though it is marked/stamped signifying it's attorney client privileged legal mail will be opened in the mail room ·and not in front of the pre-trial detainee. FBOP policy should not be able to override law pertaining to legal mail being protected and classified as private.

16. FOOD: MCC Chicago is not following nor serving the national FBOP menu. This I assume is to allow them to cut costs and allocate those funds elsewhere. This should not be permitted. MCC Chicago food service staff is allowing food items such as rice, beans and meat loaf to not be cooked properly and served to the pre-trial detainees. Meatloaf since it's a meat product should *always* be cooked properly. I have training/schooling and work experience within the culinary/food industry. I know when meat or other food items are not being prepared correctly and can be potentially hazardous. Ground beef in the meatloaf I have been served was on multiple occasions still pink on the inside of the piece of meatloaf, as well as the meatballs that are served with

certain meals. This can be potentially hazardous. This should not be allowed and needs to be addressed. Portion quantities need to be addressed as well. The portion sizes served here at MCC Chicago are *never* consistent nor anywhere near enough to adequtley allow a grown adult to become full. If a pre-trial detainee does not have the means to be able to order commissary he will be forced to feel hungry mot of the time if not all of the time. This issue needs to be addressed as well.

17. GUARD STATION PHONE: It is a constant occurrence that correctional officers at MCC Chicago utilize the staff phone located directly behind the guard-station desk affixed to the wall, to *socilize* with other staff members over personal issues instead of restricting conversation to FBOP/MCC Chicago business only. I personally have heard unit officers talking about their family life, personal plans for when they get off shift, talking about their outside friends and so on, (personal matters, not FBOP/MCC Chicago business). This *should not* be allowed. MCC Chicago officers/staff members are on the clock and *should not* be engaging in conversation with other MCC Chicago officers/staff members that doesn't pertain to FBOP/MCC Chicago institution business. Most of the time when the unit officer is engaging in this type of "social/personal" conversation with other officers/staff members it's when the pre-trial detainees are waiting to go to a scheduled appointment; i.e. medical, educational, or an attorney visit, or are waiting to come off a scheduled lock-down for body-count purposes, but are taken off of the lock-down late because the unit officer is on the phone socializing over "personal issues" instead of over FBOP/MCC Chicago facility business. You might ask, "how can you, a pre-trial detainee while under lock-down, tell if the unit officer is discussing "personal business" rather than discussing FBOP/MCC Chicago facility business over the phone while you are locked-down." My cell is extremely close to the guard's station. There is no insulation whatsoever attached to cell-doors, walls, etc. Every surface on the unit is either made out of metal, or concrete. Sound is very easily

transferred and echoes throughout the unit. Using FBOP/MCC
Chicago facility phones for anything other than FBOP/MCC
Chicago facility business should not be permitted. This issue
needs to be addressed.

18. UNIT OFFICERS: There is no consistency between the
routine of how unit officers run the individual shifts they
are delegated/assigned to cover. For example, one unit
officer might not allow you to lean against the railing and,
if you do, will issue a write-up and sanction the pre-trial
detainee. That same unit officer might not let pre-trial
detainees on the unit main floor even after morning sanitation
has been completed for up to an hour or longer. That same
unit officer might not allow pre-trial detainees to have
anything on their locker even though certain items are
allowed. Certain officers will allow pre-trial detainees to
walk back to their cell without a shirt on after they are done
taking a shower. Other unit officers will write-up and
sanction pre-trial detainees for doing the same thing. Then
another unit officer might open up the main floor right after
morning sanitation is completed as well as not have an issue
with pre-trial detainees leaning on the railing or having
neatly placed items on the top of their locker. There are
many more issues that are scrutinized by some unit officers
and not by others. There is no consistency between the unit
officer's routines causing unnecessary stress for pre-trial
detainees. Some unit officers purposely make pre-trial
detainees' time during their shift as miserable as possible
for the pre-trial detainees.

Unit officers are able to get away with writing-up and sanctioning pre-trial detainees for frivolous reasons by wording the write-up/sanction(s) reason for the infraction as "failure to follow a direct order." This allows MCC Chicago staff to get away with punishing and harassing pre-trial detainees for frivolous reasons. There is no cause for such actions, and those officers/staff should be held liable and accountable for their harsh treatment and conduct towards "pre-trial" detainees.

Facility Foreman Armstrong was on Unit 13C on Tuesday, March 6, 2018 at approximately 10:45 a.m.; this is when our lunch time starts. Mr. Armstrong proceeded to take over the unit and boss the pre-trial detainees around. Mr. Armstrong was yelling at the pre-trial detainees telling them they were not allowed to bring their plastic bowls onto the main floor. The actual unit officer Officer Zavala assigned to work Unit 13C on Tuesday first shift never has had an issue with pre-trial detainees bringing bowls onto the main floor. Mr. Armstrong then proceeded to order all pre-trial detainees to return back to their cells after they were done eating even though this is never a requirement during the M-F lunch hours. Mr. Armstrong came onto Unit 13C and for no warranted reason infringed on the actual assigned Unit Officer's authority over his assigned unit. This is another example how of MCC Chicago staff abuses their authority and position to harass and make pre-trial detainees time more difficult and stressful. Mr. Armstrong's actions and conduct should be addressed.

On Tuesday, March 13, 2018 at approximately 8:20 a.m., Lt. J. Buckle came onto Unit 13C. Lt. J. Buckle then

proceeded to use the staff telephone located on the wall
behind the guard station/desk.  Officer Schwolow was patting
down and sending out pre-trial detainees to their scheduled
cop-out appointments.  I was standing by the guard
station/desk waiting for Lt. J. Buckle to get off the staff
phone so I could ask him a question.  Once Lt. J. Buckle was
off the phone, I proceeded to ask him my question, that's when
Officer Schwolow approached Lt. J. Buckle and used her hand in
a flirtatious way to remove some type of dust/powder that was
present on the right arm of Lt. J. Buckle.  This is
*fraternization* and very unprofessional.  (I)  A lieutenant
should not *ever* allow that to happen.  (II)  Officer
Schwolow should know better than to physically touch another
officer in that kind of flirtatious manner while on duty and
in front of pre-trial·detainees.  Officer Schwolow should ·have
in a professional manner made Lt. J. Buckle aware of the
powder/dust on his arm/sweater and left it at that.  This
conduct is unbecoming of an FBOP/MCC Chicago federal official.
 This type of conduct needs to be addressed.  Officer Schwolow
for her actions and Lt. J. Buckle for allowing it to happen.


19.  VENTILATION:  Vents in cells, and throughout MCC Chicago
are covered with years of dust, mold and debris.  The entire
ventilation system is in need of cleaning. This puts pre-trial
detainees/cadre inmates and even staff at risk of short-term
and long-term health risks, especially if they have certain
underlying moderate to severe medical issues.  The Health
Department would not approve of such conditions in any
ventilation system.

20. SLEEP: Pre-trial detainees are not afforded a solid eight hours of uninterrupted sleep. Lights are not consistently turned off at night. They are only turned off after the evening "stand-up" count is completed, which can be anywhere between 10:15 p.m. and 11 p.m. Then throughout the night, the third shift unit officer is playing his or her (FM) clock radio loud enough to be heard throughout the cell block. This is very disruptive to pre-trial detainees'/cadre inmates' sleep. Officers also keep the volume of their communication radios at a very high/loud level; this too is extremely disruptive to pre-trial detainees'/cadre inmates' sleep. The unit officer also does walk-through counts three times per night with another officer. During their walk through counts, they talk between themselves in a manner which is very disruptive. Both officers also shine extremely bright halogen white light flashlights directly in the pre-trial detainees'/cadre inmates' faces causing the pre-trial detainees/cadre inmate's sleep to be interrupted several times throughout the night.

The door used by the second count officer at night is the main unit door which should not be used by any officer at night due to the very *loud* buzzer that goes off every time the door is unlocked. The officers also, instead of closing the door gently so as to not make any unnecessary noise, deliberately slam the door. Pre-trial detainees are required to wake up for breakfast M-F at 6:00 a.m. and on weekends by 7:00 a.m. As you can see pertaining to the time frame allotted for sleep as stated above, pre-trial detainees are

not provided a full eight hours of uninterrupted sleep. Pre-trial detainees are subjected to constant disruptions throughout the night caused by the unit officer, as well as the internal/movement officer who accompanies the unit officer for the unnecessary third shift counts. Every after hour count the movement officer will step onto the unit and socialize with the unit officer for up to a half hour at times and will do so in a normal tone of voice which is very disruptive. The volume of the officers' voices can be heard throughout the entire unit/cell block. These sleep times, interruptions and blatant disregard for the pre-trial detainee's sleep is malicious, abusive and punitive in nature.

Officer Ferrand is unequivocally inconsiderate of the pre-trial detainees sleep. Officer Ferrand has been working third shift on Unit 13C, on and off since the beginning of March. Officer Ferrand is constantly making disruptive noise by: running the main floor sink water, using the main floor ice machine, slamming the guard station garbage can on the ground, slamming the guard station refrigerator door constantly throughout his shift, walking back and forth from the guard station to the top deck where the staff bathroom is located in a manner which is very disruptive, i.e.; pounding his feet as he goes up both flights of stairs, allows his institution belt clip affixed to his utility belt with all of the institution keys on it rattle very loudly, as well as shines his flashlight in the faces of the pre-trial detainees for a much longer time then the other officers do, which is extremely disruptive to the sleep of the pre-trial detainees.

21. COP-OUTS: When a pre-trial detainee files a cop-out to his Unit Counselor, Unit Manager, Facility Maintenance, Trust Fund Manager, Associate Warden, Recreation, Mail Room and any other managerial office, often the pre-trial detainee never receives a response, resulting in no resolution of the issue(s) presented via the cop-out, which according to MCC Chicagos policy is the proper way for pre-trial detainees to address their issues/concerns. If the pre-trial detainee does receive a response, most of the time the response will be as such: "That is not this department's responsibility" and they will refer you to a different department and the pre-trial detainee will be given the run around until he/she just gives up. This is not right on any level.

On February 26, 2018 at 11:54:06 p.m. I sent an amended cop-out to MCC Warden Owens pertaining to a cop-out I previously sent to MCC Warden Owens on February 26, 2018 at 10:13:04 a.m. Mr. Hewitt (Executive Assistant to the Warden) at 10:13:36 a.m., and to Associate Warden Operations at 10:13:59 a.m. However, when I attempted to forward a copy of the amended cop-out to Mr. Hewitt and the Associate Warden Operations, a message popped up stating "TRULINCS - Maximum Exceeded. You have already exceeded your maximum allowed number of messages. (frmStaffRequestSend;7)."

I have copies of all cop-outs I have filed with MCC Chicago staff; some of the cop-outs have received un-helpful responses. Most, however, have not received any response. I will provide copies of these cop-outs upon request.

There is nothing stated in the FBOP handbook provided

to pre-trial detainees upon arrival to MCC Chicago about any kind of restriction pertaining to the number of cop-outs a pre-trial detainee can send to staff members to address any and all issues the pre-trial detainee might have.

22. LAUNDRY: Laundry is a majority of the time brought up wet and smelling like mold. Our whites always come back looking more dingy than before they went out. MCC Chicago does not use actual detergent to wash the whites per information received by laundry room workers. They only use water which puts pre-trial detainees at risk of catching such conditions as Scabies, Crabs, Staph and Mersa. Pre-trial detainees then resort to hand washing their own clothes but do so at the risk of their clothes being confiscated (depending on the unit officer) if caught hang drying their clothing items. This is absolutely ridiculous. Two laundry bags should also be issued to all pre-trial detainees, so as to afford the pre-trial detainees who do want to send their laundry out, either their colors or whites can have another bag to place their dirty items in.

23. PSYCHOLOGY STAFF: There are four psychology interns that work on Unit 13C here at MCC Chicago, three of whom are female. They have allotted office space they use on the very top floor/section of the unit; Unit 13C, however, interns Ms. Abdelaal and Ms. Vigil frequently utilize offices located in the pre-trial detainees unit recreation room/area. However, when Ms. Abdelaal and Ms. Vigil utilize those back offices, pre-trial detainees are banned from that area. Ms. Abdelaal

stated that it's a new rule/policy that we cannot be back there while her and Ms. Vigil are there.

That is the pre-trial detainees unit recreation area. There has been nothing new stated or posted on the pre-trial detainee bulletin by administration staff pertaining to this change in the rules/policies pertaining to this "new" restriction Ms. Abdelaal has implemented. We are being punished by staff constantly even though Federal Due Process Clauses state specifically that "pre-trail" detainees are not supposed to be punished "at all." The pattern at this facility by staff pertaining to the care of pre-trial detainees is to make up new rules as they go, and to randomly do so without actually placing those rules on paper and enacting them as actual policy. If a pre-trial detainee then refuses to comply, he will be written-up and sanctioned, sent to the SHU, and lose privileges. Also, Warden Owens, to add insult to injury will contact that pre-trial detainee's judge. This is absolutely malicious and ridiculous. There is zero reform in places/institutions such as MCC Chicago. Just blatant corruption and punishment towards non-sentenced "pre-trial" detainees. Conduct such as this by staff *needs* to change. This kind of conduct is not only exercised by the psychology staff, but by the majority of MCC Chicago staff members.

24. CLOTHING: Clothing issued to inmates is to be per the policy/inmate manual, "climatically suitable". However, with the air conditioning set between 59-64 degrees, (Officer Rodriguez stated this information), during spring, summer and

into the winter months is abusive. They do not provide us with long sleeve shirts or sweaters to wear under these extremely uncomfortable cold conditions. Finally, in December, they do turn the heat on. However, the heat is not consistent. MCC Chicago runs the winter temperature control in such a manner that it causes pre-trial detainees to be constantly sick. They will run the heat for a few days at a time then run the air-conditioning for a few days, then turn the heat back on. This is a regular occurrence. It's winter, there is no other reason for doing such a thing other than to make pre-trial detainees more uncomfortable than they already are.

I have experienced more colds while incarcerated at MCC Chicago then I have in the last two decades of my life. That's ridiculous and shouldn't be something I have to experience, nor should any other pre-trial detainees.

25. CLOTHING EXCHANGES: When FBOP/MCC Chicago clothing items need to be replaced or exchanged, the exchange process is made extremely complicated due to the following: (I) The unit officer refuses to make a call to laundry on behalf of the pre-trial detainee. (II) The officer in charge of the laundry department will refuse to make the exchange for the pre-trial detainee even with an approved exchange/replacement form issued to the pre-trial detainee by the Unit Counselor. (III) The internal/movement officer won't allow the detainee needing the exchange on the elevator, even if the pre-trial detainee received approval by the laundry department officer to do the exchange.

26. SHEET EXCHANGES: Sheet exchanges are supposed to be done weekly on a scheduled day and time as per (MCC Chicago policy, inmate manual, page 9) rather then once every 4-6 weeks.

27. INTERNAL/MOVMENT OFFICERS: The internal/movment officer(s) work the elevator. First/day shift internal/movment officers constantly make pre-trial detainees late for their medical, dental, religious, educational appointments as well as for law library, family visits and attorney visits. The average time internal/movment officers make pre-trial detainees wait before picking them up to take them to their "scheduled" appointments is 30 minutes, and sometimes over an hour. I myself missed an attorney visit due to the negligence of a day shift internal/movement officer. My attorney could no longer wait. This behavior is deliberate and malicious.

28. LAW LIBRARY: "The Law Library located in the Education department is available for use for a minimum of 3 hours per week/per unit." Refferance quote to page 24, 6th paragraph down of the MCC Chicago inmate handbook. Since I have been at MCC Chicago. We have *never* be afforded even the *entire* 3 hour minimum of Law Library time. The average time that we recieve is two hours per week due to the following reasons: (I) Not being able to arrive exactly at noon which is the scheduled time for my unit, Unit 13C to start their Law Library time every Wednesday because of the internal/movment officer. (II) Mr. Adams the Educational Department Director

makes us leave at 2:30 the majority of the time. The MCC
Chicago inmate handbook states per MCC Chicagos policies that
we are supposed to recieve a *minimum of 3 hours per week per
unit of Law Library time. Law Library access is an important
resource for pre-trial detainees. This issue needs to be
addressed.

29. UNIT 23: There is an extremely big liability issue that
Warden Owens obviously doesn't care about or isn't aware of.
MCC Chicago is housing pre-trial detainees with already
designated FBOP inmates/prisoners who are serving out their
actual court sanctioned time here at MCC Chicago. This should
not be allowed.

        The designated FBOP cadre prisoners are at *high* risk
of getting further time and possibly even additional charges
against them if they get into a fight with a "pre-trial"
detainee. This puts the cadre prisoners at risk of turning
their short time into a much longer time. Even though it
might be a self-defense situation, the system is set up to
punish and charge both parties, which is not right.

        FBOP cadre prisoners at MCC Chicago are not trying to
get into anymore trouble because they are all doing very short
sentences. Housing them with pre-trial detainees is a huge
liability for the cadre prisoners. It puts their safety and
potential time at great risk if a pre-trial detainee facing a
lot of time and potentially in his eyes has nothing to lose by
attacking one of the cadre prisoners. Issues such as these go
un-checked continually.

        The federal courts do nothing to intercede and hold

FBOP staff accountable for their actions/management of facilities like MCC Chicago, nor does Congress, the Executive branch, Judicial Branch or any of the other organizations delegated with the investigation and accountability of the FBOP. The staff at MCC Chicago does whatever they want to do because they know there is no accountability for their actions. MCC Chicago staff treats pre-trial detainees the way they want to, even if it violates/breaks federal statutes, policies, and or civil/constitutional rights. But if I or any other non-government affiliated citizen breaks the law we are thrown into a facility such as MCC Chicago and have to fight a very corrupt system set up and designed to work in favor of the government's interests to regain our freedom. How is this justice?

30. COMMISSARY ISSUES: This section pertains to actual law/regulation. Reference CFR site: Prisons are allowed to mark up commissary product costs for sale to inmates. This regulation "requires" the "profits" of those charges over and above product costs to be used for specific purposes: (I) To offset any costs of administering the program, and (II) all remaining funds to "benefit" inmates/detainees. Commonly, in federally-run facilities, recreational activities, recreational supplies as well as presumably for items such as televisions, puzzles, games and microwaves.

The problems are: (I) that no financial statement is published in a place that inmates and their families can review it, and (II) inmates have no input into the expenditures of the dividends spent for the

inmate's/detainee's benefit. CFR law/regulation should be altered to require the publication of detailed reports of all income and expenditures of said "profits," and the names/titles of those FBOP personnel involved in the expenditure program. Inmates are appreciative of the availability of microwave ovens and recreational supplies, but cannot currently know if these "restricted" profits intended for inmate/detainee benefits are instead being used to purchase microwave ovens used exclusively by staff. Every unit or deck officer's station is equipped with a microwave for the exclusive use of the officer. All MCC Chicago inmate/detainee units were equipped with microwave ovens up through September of 2017. However, in September of 2017, they were removed with no explanation as to why, and were never replaced. Inmates need assurances and evidence that the funds restricted/delegated for inmate benefits are not being coupled with purchases of already required institutional equipment. These funds *should not* be used for any institutional requirements like: uniforms, bedding, hygiene supplies, toilet paper, soap, postage stamps and other supplies "gifted" to indigent inmates/detainees.

31. ADMINISTRATIVE REMEDY PROCESS: I cannot hope to adequately explain the myriad ways the FBOP uses the Administrative Remedy Process (ARP) to avoid responsibility for their failure(s). Much has been written in many publications detailing either *types* of abuse *or* specific incidents of abuse of this system.

First, a little history. Inmates filed complaints

(took form of lawsuits) in the courts objecting to conditions of confinement, mistreatment at the hands of authority, failure to protect from harm and lack of medical care/improper care. The courts, quite naturally, suggested that these issues should first be addressed to the FBOP. Thus, the birth of the ARP. This ARP is now "required to be exhausted" prior to any filing with the courts. It is a three-step process: the BP9, BP10, BP11. The 9 is institutional-level; the 10 is regional administration level; the 11 is national or central bureau level. There are time limits for filing at each level. One day late and, regardless of the validity of the complaint, the issue is rejected. Seems reasonable so far, right?

But from the very beginning, every effort is made to avoid addressing the detainee's/inmates issue(s). The institution will not provide the form required to be used in the first step of the authorized process, the BP9, unless the detainee/inmate first completes an "unrelated" and "unauthorized" form. One not called for in the published regulations. One they have named the BP8, presumably to imply some sense of legitimacy to its use. This BP8 for its ostensibly an *informal* attempt at resolution. In actuality its purpose is to prevent *formal* registering of issues using the official BP9 form from which is supposed to create an official record of detainee/inmate complaints/issues.

Books have been written about this process. The publication "Prison Legal News" can be referenced, specifically the following articles: www.prisonlegalnews.org. Issues: February 2017, page 53, March 2017, page 54 and

Each Pre-Trial detainee/cadre inmate is to have the right per FBOP policy to meet with thier Unit Team every 90 days. This team is made up of a counselor, Case Manager and Unit Manager. Most counselors don't even show up for a full ten hours per week to adress Pre-Trial detainees/cadre inmate's issues/concerns. When counselors are present on theunits, it's usually to present Pre-Trial detainees with illegal write-ups and sanctions (referance Due Process Clauses). If the counselor does allow the Pre-Trial detainee/cadre inmate to talk to them, they will be very quick to dummy-down the Pre-Trial/Cadre inmate's issue(s) and literally give them the cold shoulder. The counselor will rush the Pre-Trial/Cadre inmate out of his or her office and do it in a manner that is extremely rude, uncalled for and unprofessional. The Unit Manager will *never* come to the unit to adress Pre-Trial detainee concerns or respond to any filed/presented cop-outs. Counselor P. Robinson and T. Write are the *only* counselors that will actually try to help resolve Pre-Trial/Cadre inmate's issues.

Current Conditions at MCC Chicago include, but are not limited to:

1. Rust in all cells.

2. Black mold growing in cell 1314 Unit 13C, and many more cells throughout the facility. Ref: #3 of this document for list of staff notified for this particular issue. MCC is still housing Pre-Trial detainees in cell 1314 of Unit 13C

3. All cells and common areas have intake and output vents caked in dust, rust, mold and debris.

4. Shower areas smell like sewage.

5. Medical issues, including serious medical issues, continually go undressed by all medical staff.

6. Special Housing Unit (SHU) is unequivocally disgusting, unsanitary and a health hazard.

Closing statement: All of the issues I have raised *need* to be addressed and *resolved*. They are all issues that, especially when combined, inflict punishment, pose cruel and unusual punishment, abuse and haressment, and facility-wide negligence as well as indifference.. MCC Chicago staff treat

"Pre-Trial" detainees as if they were already sentenced/designated prisoners. However, the treatment of FBOP prisoners at actual FBOP prisons is nowhere near as intentionally abusive and malicious as the treatment and conditions Pre-Trial detainees are subjected to at MCC Chicago.

The Constitutional reference/saying "innocent until proven guilty" in no way shape or form applies to the way MCC Chicago treats it's Pre-Trial detainees. I/We are punished prior to being convicted of the crime in which I/we have been incarcerated/detained for. MCC Chicago staff have one goal: Make every PreTrial detainee feel as miserable as possible to assist the prosecutors in getting the Pre-Trial detainees to plead out, instead of fighting thier case and taking it to trial.

Thank you for your time in reading/reviewing this affidavit.

I Declare under penalty of perjury that the foregoing is true and correct.

Dated on this 25th day of June, 2018.

Respectfully Submitted,

By: Jason A. Crawford
/s/Jason A. Crawford
Reg. No. 16196-089
MCC Chicago
71 West Van Buren Street
Chicago, Illinois 60605

Jason A. Crawford
Reg. No. 16196-089
MCC Chicago
71 West Van Buren Street
Chicago, Illinois 60605

Dated: June 25, 2018

cc:
Donald Trump (President of the United States)
Jared Kushner (Senior Advisor to the President)
The Honorable Chuck Grassley (U.S. Senate)
The Honorable Dianne Feinstein (U.S. Senate)
The Honorable Tammy Duckworth (U.S. Senate)
The Honorable Lindsey Graham (U.S. Senate)
The Honorable Jeff Flake (U.S. Senate)
The Honorable Patrick Leahy (U.S. Senate)
The Honorable Sheldon Whitehouse (U.S. Senate)
The Honorable Mike Lee (U.S. Senate)

The Honorable Bob Goodlatte (U.S. House of Represenatives)
The Honorable Jerrold Nadler (U.S. House of Represenatives)
Mark S. Inch (Director, Federal Bureau of Prisons)
U.S. Department of Justice (Office of the Inspector General)
Federal Bureau of Prisons (Office of Internal Affairs)
Kevin Ring (FAMM National Office)
P.G. Miller (Federal Legal Center)
Jason Meisner (Chicago Tribune)
Jim Kirk (Las Angeles Times)
Dean Baquet (New York Times)
Martin Brown (The Wasihington Post)
Nancy Ancrum (Miami Herald)
Dana Coffield (Denver Post)
Audrey Cooper (San Francisco Chronicle)
Rose Cahahan (The Texas Observer)
Mike Fannin (Kansas City Star)
Andrew Morse (CNN)
Phillip T. Griffin (MSNBC)
Rebecca Daugherty (ABC News)